My name is William Gibbs. I'm on behalf of the plaintiff's appellees, Jodine and Christopher Williams. Mr. Williams is present with me at the court. Morning. Are you going to divide your argument? Yeah. What we thought of, Your Honor, was Mr. Brown would take the first two questions on applicability of 622, and then I would handle the last or the third question on who the report would have to be prepared on. And minutes-wise... Are we subject to 20 or 15 or... We're liberal. Okay. As long as you don't start repeating yourself. I'll be honest. I think the papers are relatively clear. So if there's something that guides the judges, of course, we'd like to know. But if I'm talking for more than 10 minutes, I think there's probably a problem. Probably 10 and 5 with a little bit of rebuttal. About the same, whatever. I think about 15 minutes would be more than sufficient. Perfect. I don't even know how to turn the light on, so... It might be helpful if you just get into your argument. I mean, we're all very well versed in the facts. Okay. Whatever you need to do, but... Sure. Okay. Okay. Thank you. Thank you very much. Thank you. Thank you. Obviously, we have three certified questions. We basically feel, on the defendant's side, the first two questions are so similar that we can address them at the same time. The issue that we're presented with is licensed athletic trainers who are subject to statute here in the state of Illinois, governed by the regulations applicable to professionals. Two sets of athletic trainers were at the field where Mr. Williams, Drew Williams, suffered his tragic injury. The allegations at issue are key. It's the nature of the allegations that matter with respect to applicability of 622. The allegations are not such that the athletic trainer, you know, a premises liability or general negligence type claim where an athletic trainer is standing on a sideline and accidentally trips someone and they're injured. It's a failure to, an alleged failure to assess brain trauma, to evaluate Drew Williams for a concussion, and to recognize the signs of brain trauma. Is what the trainer did on the sidelines any different than what an ER doctor would do in a hospital? An athletic trainer is subject to certain guidelines that it would follow with respect to athletic training for students. If, by way of example, I believe the allegation is basically that Drew Williams incurred an impact in the first quarter, the athletic trainer would be there to evaluate Drew Williams. He would be looking for signs of whatever it is that Drew Williams might be suffering from at that time. His job would be to see if there was something that required an ER doctor to promptly call the ER doctor. That type of conduct is not in dispute here because that did happen when Drew Williams actually fell. So it's a different type of conduct in terms of athletic trainers are subject to a different standard, but it's a medical standard and it requires medical judgment. And in fact, athletic trainers are subject to supervision by physicians. But in this case, there wasn't even, they didn't do anything. They just let it go. The allegation is that there wasn't even, they didn't perform their job. Right, we would use that as a failure to diagnose. So if he's looking at Drew Williams and doesn't see signs of brain trauma, perhaps he doesn't perform the concussion test or whatever it is at that time. Let's say after the first quarter. When the incident happened in the first quarter, nobody looked at him. He just went off and they continued to play. That kind of detailed information isn't in the complaint. My understanding is he actually was looked at. That's correct. But the issue is should he have, knowing what happened in that incident, or even not knowing what happened in that incident, should he have evaluated or understood that there was a brain trauma? That's essentially a diagnosis. If a doctor has a patient who comes in and says, my side hurts and my ankle hurts, but the doctor ignores that the ankle hurts and is actually broken, it's similar to an athletic trainer, an allegation that that athletic trainer should have known, based on the standard of care that applies to an athletic trainer, that there was something in terms of a brain trauma that he should be evaluating. And that's the crux of what's being alleged against the athletic trainers. Are the defendants involved licensed by the state? Yes, they are. Are they required to be licensed? Yes, they are. Does licensing play a part in this case as far as the claims? There's no claim that they were not licensed, no. Right, but I mean is the fact of licensing important to the claim in your judgment? For failure to act as a licensed professional would act, or to act as anybody in that position would act? Yes. Our athletic trainers could not have been there under contract as athletic trainers, but for their licensure as athletic trainers, knowing what athletic trainers know and what they must do in that capacity at the field. So it is critical, yes. Would you say that a licensed athletic trainer in the state of Illinois has a different standard to which he has to apply himself than an unlicensed trainer? If you hold yourself out as an athletic trainer and you're not licensed, you would be subject to potential criminal conduct. Let's say there's a student at a school that trains people to be athletic trainers, so the person's not licensed yet, but they're on the sideline with a licensed trainer, and they're both there. Obviously we're speaking hypothetically. I'm not sure what the duty would be to that person who's not licensed. I don't know what capacity in which that person would be doing anything. Would a 622 be necessary for the student under your consideration? I suspect that there would have been a motion to dismiss on whether there was a duty at all. I'm not sure you could plead a duty to a student who happens to be standing there on the sideline. I guess, and I don't have the knowledge, and perhaps somebody else does, perhaps a doctor in residency, what licensure do they have? I don't know. So under that hypothetical, I just don't know what the duty would be. So the idea that because this was athletic training services pursuant to contract doesn't matter under the statute. It applies to contracts. And the contract is for, frankly, the provision of athletic training services. The way I view it and that we view it as the appellants is that this is the crux of what they do. And so is what they do a healing art? Because clearly that's what's at issue in the lawsuit is did they perform their obligations as licensed athletic trainers appropriately? So to treat it as general negligence, this isn't Milos where it's a coroner not treating a person for injury, potentially or actually, where there were allegations of willful basically cover-up of potential medical malpractice. This isn't a nursing facility like Owens where someone, you know, you're just overseeing someone and you shouldn't have allowed them to get up from the chair in the way that they did. This is regarding athletic trainers who under, you know, the statute are tasked with carrying out the practices of prevention and emergency care or physical reconditioning of injuries incurred by athletes. Can I ask you about the questions that were certified? There were two of them. Was that because the parties couldn't agree on one certified question? Questions 1 and 2, 1 was proposed by plaintiff appellee and 2 was proposed by the defendants. But they're meant to address, in your view, the same issue. They are. I believe the appellee's position was that perhaps ours didn't trace the allegations. I believe ours says something along the lines of evaluate and the allegations are assess, evaluate, and recognize. So they wanted to use their own language. Our primary issue with that was that it couched it in a way to withdraw certain inferences with respect to assess, withdraw, and recognize. But we think it's the same question, more or less, for this court. Well, on that general topic, the first question refers to alleged negligent conduct by an athletic trainer. The second question says alleged negligent conduct by a licensed athletic trainer. So the second one includes license. The first one does not. That doesn't make any difference in your mind? I'm not sure why license is not in the first question. There is no such thing as an unlicensed athletic trainer that would actually be acting in the capacity of an athletic trainer in the state of Illinois. So we're talking about whether you need a 622 affidavit when negligence claim is brought against a licensed athletic trainer in the state of Illinois. That is correct. Any type of negligence or by contract. The 622 applies to tort and contract, alleging healing art and health practice. Right. And we're not trying to make this overbroad. When I give you the example, just because an athletic trainer is there, if they brought a bench and it broke and someone was injured, right, I mean, that's a different situation. But in the performance of their services, yes. Thank you. There are other issues with that I think I'll let my co-counsel address in terms of the type of evidence that would be required here because I think that also ties in with respect to who would provide an affidavit if one is required. Thank you. Thank you. Thank you. Good morning. I'm going to address the third question, which is basically, if the report is required under 622, then by whom must the report come from? I think you have to look at 622. There are two separate requirements. One is there's a requirement of an affidavit by an attorney or by the plaintiff if the plaintiff is unrepresented that the attorney has discussed, consulted and reviewed the facts of the case with a health professional who the affiant, the attorney or the party reasonably believes is knowledgeable in the relevant issues, has practiced or is practicing or has practiced in the last six years or teaches or has taught within the last six years in the same area of health care or medicine that is at issue in the particular action. And three, is qualified by experience or demonstrated competence in the subject of the case. An additional part, and I think a significant part of that affidavit requirement is the next sentence, which says that the reviewing health professional has determined in a written report after an action there was a reasonable meritorious cause. So the affidavit requirement of 622 requires the attorney to consult with somebody in the same field who either practices or has practiced or teaches within the last six years and who has determined there is a meritorious cause of action for that. And so you say the same field has to be another certified athletic trainer. Yes. And yet in your first argument you say this is really healing art now practice and we're talking about evaluating a head injury. And whether it's on the sidelines of a football field or in an emergency room, how is it different? Because the standard of care is different. Certainly emergency room physicians have a lot more specialized training and knowledge and background. They go through a lot more rigorous education, residency requirements, testing, board certifications, et cetera. That conduct is more specialized than the athletic trainer who is merely licensed, attends a certain school, passes a certain exam, and receives their license and then practices. They're two separate things. And a lot of athletic trainers are Ph.D.s, aren't they? They are. There's a doctor of athletic training as well. But they're still not medical doctors. They still cannot treat or diagnose under the... Well, you know, Athletico's website describes its trainers as trusted health care professionals. Right. In their field. But does that automatically convert them to an emergency room physician or even a surgeon or a neurologist who has more specialized training to diagnose a bleed or a concussion in a patient? But if both an ER doctor and a licensed athletic trainer on the sidelines are doing an initial assessment, which is what we're talking about, and they're asking the same questions of the player, you know, what day is it, blah, blah, blah, looking how their eyes are moving, why can't the doctor provide the affidavit? Because that gets into how the court has interpreted 622 under the Dolan case and under the Christmas case. In the Christmas case, for instance, the 1st District, 2nd Division held in looking at who it is that can prepare the report and what qualifications or background one needs to prepare that report, the Christmas court said, the Christmas court analyzed the legislature's intent and concluded it would be unreasonable not to require the health professional who initially reviews the case for merit is legally competent to opine on the standard of care that is at issue in the particular case. By mandating that the reviewing health professional be licensed in the same profession as the defendant, this is what 622 requires. In the Christmas case... Not in all cases. Pardon me? Not in all cases. Remember Christmas was the... Remember the rest of the statute you stopped reading. The remainder of the statute says if the affidavit is filed against a certain defendant... Right. You need an affidavit from a health care professional in that field. Right.  A podiatrist, you need a podiatrist. A dentist, you need a dentist. In all other cases, a doctor licensed in the general practice. That's exactly right. There are those five carve-outs, if you will. We don't have doctors here. I agree. I agree. It's none of the five that are enumerated in the statute. Right. But I think you have to read Christmas and Dolan along with Jackson when you determine what was the legislature's intent in drafting 622. I agree. I think 622 is vague. I think it's vague because if you look at subsequent interpretations of it, Dolan, Christmas. The Christmas case, the reviewing professional was a podiatrist at one time. The problem in Christmas, though, was at the time he prepared the report, his license had expired. So he had all of the qualifications and the requirements to be a podiatrist, but he did not renew his license because he went on to be a physician. And the Christmas court says that affidavit is no good. Despite the fact you have all the training, the knowledge, the expertise as a podiatrist, you weren't one at the time. You weren't licensed. So the fact that you weren't licensed is enough. You didn't comply with the requirements of the statute. Exactly. So the statute, the way it's written, you're right, Your Honor, an athletic trainer is not one of the listed five. So the statute literally says it then must be signed by a physician who has knowledge of that field. So a doctor who specializes in the treatment of athletic head injuries would not be qualified to sign an affidavit in this case. Right, because when you read in Jackson, the holding in Jackson, the third requirement or the third factor when 622 is required is what evidence will there be at the time of trial to establish the standard of care? And in the case of a professional negligence against a licensed athletic trainer, the evidence at the time of trial will have to come from a licensed athletic trainer. It can't come from a physician because under Dolan it says, if you were to do that you're holding an athletic trainer to the standard of a physician. And what Dolan says is why couldn't a physician testify at this trial? I assume it got that far. Why couldn't a physician say anyone, someone who is there to evaluate a high school student as to whether he suffered a traumatic brain injury would look for this, that, and the other thing, would flash a light in his eye, would ask him his name, see if his responses are appropriate, determine whether he's vomiting, is he oriented or disoriented. That's what a person would do to evaluate trauma. He wouldn't say a doctor would do that. He would say this is what you do. He would testify to things that the typical juror may not be aware of. So he's not ascribing a neurosurgeon's standard of care. He's applying what you look for in evaluating whether somebody suffered a trauma. But that's part of it. And the danger with allowing a physician to give that standard of care opinion at the time of trial is that the jury is going to think, okay, here's a physician or neurologist, a neurosurgeon. Let's believe him over the athletic trainer because he knows more than the athletic trainer. And that runs contrary to government. And what expert would the defense proctor? It would be another certified, licensed athletic trainer. Who would say probably, in all likelihood, exactly what the neurosurgeon was saying. Yes, to those defining criteria. In other words, what is it that you look for? You look for these things. Like your honor said, what day is it? What's the score of the game? Where are we? Standard questions. But one of the allegations in this case is that Athletico failed to recognize the signs of Drew Williams suffering a brain trauma. Well, that certainly is beyond those simple questions. Where are we? What's the score? Et cetera. No, we're being charged with having to make a diagnosis of some brain trauma. That's well beyond the expertise of an athletic trainer. And that's where you need the evidence from other athletic trainers that we don't diagnose brain trauma. We only ask these questions. These are just signs. By the way, sometimes the sign may not indicate what is actually going on. Maybe he doesn't know the story. Is it your contention that if a neurosurgeon was ‑‑ if 622 applies, and if 622 is met by a neurosurgeon saying this is what should have been done, or I think this is a meritorious claim, are you saying that therefore the plaintiff must present a neurosurgeon as their expert at trial? If it's a neurosurgeon? I'm sorry. If he's suing a neurosurgeon? No. I'm sorry. This defendant is being sued by this plaintiff. Right. If 622 applies, this plaintiff submits an affidavit from an unknown neurosurgeon. Yes. Who says this is what I reviewed, this is what I did, and I think there is a meritorious case here. That should be sufficient to avoid a 622 dismissal. Are you saying therefore a neurosurgeon must testify on behalf of the plaintiff to establish the breach of care? No. Right. So what difference does it make? The difference is you cannot rationalize the holdings in Dolan and Christmas as to the intent of the legislature in drafting 622 by saying that you can have a neurosurgeon or a physician give the report or sign the report against an athletic trainer when that particular specialty is not going to be allowed to testify at trial as to the standard of care of that defendant. It would be like if you represent a cardiologist and he or she is being sued, having an internal medicine doctor draft the report and testify at the time of trial as to the breach of the standard of care of a cardiologist. You can't do that. It has to be like that. Would an internist file the 622 affidavit? In that particular case with a cardiologist? Yes. No. It would have to be a cardiologist. Because 622 says if you're suing a defendant who does not administer medicine, et cetera, it must be from that particular person. 622 says if an affidavit is filed as to a defendant who is a physician licensed to treat human ailments without drugs, medicines, without operative surgery, a dentist, a podiatrist, et cetera, it does not say, and if he's a cardiologist, the affidavit has to be filed by a cardiologist. It says somebody familiar with these or has the background sufficient to satisfy the requirements of the contents of the affidavit, not the specialty of the affiant. I agree, but the other part of 622 is the affidavit requirement just above that language which says that you have to have the experience and have practice in that field, the affidavit part of that. And that section also says that the report should be authored by that same person with that same background. That's why I read that part first. So I think in this particular case, when you read Jackson and Dolan and Christmas together with the affidavit part of 622 and the subsequent part of 622, I think the only logical conclusion on how all of that is rationalized is the report must be signed by a licensed athletic trainer or if you read the statute literally by a physician who has that experience, that knowledge, and who has practiced or taught in that field in the last six years. I don't think there's any other way you could read that, especially when at the time of trial Dolan says a practitioner in this field, it's required that somebody in the same field testify as the standard of care. But you seem to be reading out the last sentence, you know, the one Justice Pierce talked about for affidavits filed as to all other defendants. You seem to be ignoring that line. I don't ignore it. I don't intend to ignore it at all. But your argument just now did ignore it. Well, what I'm saying is when you look... But you can look at other things except that we give the specific sentence here. How can we ignore that? I absolutely agree. That is the literal reading of the statute. As to all other defendants, whoever they may be or whatever they may be, if they are practicing in healing arts, it must be a physician. But what I'm saying is the case law interpreting 622 seems to indicate that that's not really what that says because it requires these different fields. But no case has held that a non-physician must satisfy that section of 622. That would be new, right? Right. Yeah. I agree. But when you look at what is the awful proof at the time of trial as to standard of care in the Christmas case, I think, even though that expert was qualified as a podiatrist, he just wasn't licensed. And so they said that's not a sufficient report, and they struck it. But you're confusing what it takes to get by the motion to dismiss and what it takes to prove the case. Yes. 622 does not deal with proof. That's right. And its purpose was to eliminate frivolous or non-meritorious causes of action. What I'm saying is the logical reading of that, if that is the intent, and if the intent of the third factor in Jackson is at the time of trial, what evidence do you need, then how can the intent be different? How can the 622 require an affidavit from an attorney that you've consulted with someone in the same profession, but then you can get a report signed by somebody outside that profession, and then at the time of trial you need to go back and have the evidence from someone in that profession? I don't think that's consistent. I think that the intent was to have all these things reviewed and the report written by somebody in the same field so that this is all consistent. Affidavit, report, and evidence at trials, all from the same field or same profession. And I think that's what this Court should do. Thank you. May it please the Court, Counsel, and Mr. Williams, just to step back a bit to give you some context on how it is that we sort of get before you today. Our human brains are amazing organs, but they're also very fragile. And more and more as a society over the last few decades, we have recognized how significant the fragility of the brain is in the context of contact sports. Our brains sit, they're a gelatinous, gelatin-like organ that sits within our skull cavity. And when they are jostled within our skulls, the axons are deteriorating. We call that concussion. That can come from striking the inside of the skull or simply just the movement of the brain within the skull. And we have come to an understanding, and science has come to an understanding, that when that incident happens and it's not recognized, and the key word is recognized today, that really terrible things can happen to the brain. Long term, we've heard about what can happen, neurodegenerative diseases like CTE that can develop. But in the short term, there's this syndrome, second impact syndrome. And what happens is that initial concussion, when unrecognized, and then the brain is subjected to further concussive brain traumas or any type of brain traumas, not even what's called sub-concussive, those traumas continue to happen to the brain while the brain is trying to recover from the metabolic cascade that is happening to it, can produce this syndrome, second impact syndrome, where the brain begins to, quote-unquote, freak out, swell, increasing the intracranial pressure, causing severe hemorrhaging. And in this case... This all sounds very medical to me. It's an interesting phenomenon. Go ahead. But in light of all you just said, why would we need an amputation? So, what we have as a society decided, I believe, is that while people are playing the game of football, someone needs to be looking to recognize any sign of concussive brain trauma. Someone. And the someone can come in a lot of different forms. Our legislature recently passed a bill that says a student must be removed from athletics if, essentially, a concussion is recognized by a coach, a physician, a game official, an athletic trainer, a parent, a student, or anyone else deemed appropriate under the school's return to play policy. That's not to say a parent would be liable for not recognizing the signs of brain trauma. So, what difference does it make if it was a team doctor who was on the sidelines? You'd have to get a 622 affidavit. But if it's a licensed athletic trainer who is described as a trusted health care professional, you don't. So, I promise I will get there. I promise I will answer your question. I hope. What happened in this game, October 4th, 2013, at Gately Stadium, Lane Tech versus Dunbar, is two entities were assigned to look out for concussions. Athletico was retained by the Chicago Public School System, CPS, and they had a contract for the entire season that said Athletico will always have someone, according to the complaint, qualified to provide evaluation and assist on all matters pertaining to the health. And so, Athletico is watching. Lane Tech itself, specifically, contracted with Accelerated, and Accelerated assigned Albert to the game. And so, Lane Tech had its own person, according to the complaint, that would watch for signs of concussion. And so, in this game, in this instance, those that were watching for signs were these defendants. The question now that is here is whether those people that were assigned to watch, recognize concussions, are engaged in, quote-unquote, healing arts malpractice. And that's what the statute says, that it must be healing, it must be an art, it must be malpractice. And all of the cases say that healing, by its definition, means the restoration of one's physical or mental health. When someone who is supposed to be watching for signs misses it, or doesn't act in the presence of those signs, they're not engaging in healing arts malpractice. An emergency doctor would be engaging in healing art malpractice when he or she does the same thing. What day is it? What's your name? Where are you? Shine a light in your eyes. All of that. And if that doctor missed the diagnosis of a brain trauma, that would be healing art malpractice. But you say when a licensed athletic trainer does the same thing, it's not. So I don't say the licensed athletic trainer did the same thing. That's the difference. That's a close, tough case. If an athletic trainer actually is the one shining the light in the eye, doing a visual field inspection, doing a cognitive test, if that's going on and that's done negligently, that's a much tougher case than the one before you today. The one before you today is not that these athletic trainers did any of that. They didn't start down that path. You're just saying they didn't do anything. They didn't do anything. If the emergency room doctor didn't do anything, healing art malpractice. If the emergency room doctor was seeing a patient and didn't do anything? Healing art malpractice, right? Well, the emergency room doctor has a little different standard. The emergency room doctor can actually diagnose concussion. Yeah, but a failure to diagnose is malpractice also. I agree. So isn't this a failure to diagnose a concussion that took place? Athletic trainers cannot, as a matter of law, diagnose concussion. They cannot. They can recognize concussion. They can perform an assessment to determine whether a concussion is suspected. And they can evaluate a student to determine whether a concussion is suspected. And then, and it's right in the contract, which is in the complaint, and then they turn the student over to a physician because the physician is the only one in the state of Illinois that can perform, that can make a diagnosis of concussion. But even taking that into account, why shouldn't we look at the Jackson factors, which you seem to not want to kind of ignore to some extent? The Jackson factors. In order for us to rule in your favor, I don't see how we can, we'd have to ignore Jackson. I disagree. Okay, tell us how. I disagree. Tell us how you would look at the three factors. Sure. So Jackson says that an occupational therapist, in the context of performing a functional capacity evaluation ordered by a physician, and therefore part of the patient's concrete condition. No, no, that's not what we're talking about here. Okay. That's what Jackson says. No, that's not, we're just looking at the factors. I'm not looking at the holding in Jackson or the situation in Jackson. What Jackson did is in order to determine what the healing art malpractice is, it says there are three factors to look at. Understood. Let's look at those three factors. Understood. You're adding something else that I don't think applies. Understood. The first factor is whether the standard of care involves procedures not within the grasp of ordinary lay jurors. And that's why I began my argument with the way that I did. Everyone in and around the game of football today and in 2013 must be on the lookout for signs of concussion. It's not limited to athletic trainers. It's not limited to the physician on the sideline. It's not limited to the ER guy. It's everyone. It's coaches. It's players. But the level of knowledge that people have depends on their training and their background. And athletic trainers have a much broader base of knowledge for diagnosing, okay, I won't say diagnose, evaluating and detecting head injuries than a parent standing on the sideline does. Maybe, maybe not. And the average juror is the parent standing on the sideline. The CDC, the Center for Disease Control, has things that parents should be looking out for, things that coaches should be looking out for. Which is different because the Jackson factor says whether the standard of care involves procedures. The standard of care for a parent is going to be different than for a licensed athletic trainer. And therefore, we're not looking at the parents. We're not looking at the coach. We're not looking at students. We're looking at athletic trainers. And what I'm saying is the standard of care is that whoever is charged with watching for signs of concussion should do so. And in this case, the allegation is simply that they failed to recognize it and as a result failed to evaluate or assess it. Not that they did the assessment. That is standard of care. If the allegation was under the Jackson factors that the athletic trainer failed to do test five of eight tests that should be performed in the presence of a suspected concussion, according to the first factor of the Jackson court, that would be standard of care. Because now you're into what exactly they should have done, which I think is what Jackson was saying. The functional capacity evaluation and the way that it was performed was standard of care type stuff. So you're saying that standard of care only comes in when somebody does something? If a doctor does nothing, then we don't talk about standard of care? Not in every case. Not in every case. But why would you differentiate this situation from other cases? What I'm saying, and I might not be saying it artfully, but what I'm saying is that the standard is that whoever is charged with looking out for these kids, whether it's a coach. Well, here we know who it was. It's rather simple. They should be looking out for signs of concussive brain trauma, and that that doesn't require any specialized training. The standard of care for somebody that's trained here would be much different than a coach, for example. I mean, they've been trained to look out for them. That's why they were hired. That's why these people were on the sidelines, right? So that standard, their standard to me would be higher, greater, because of their training. The standard of care, I would expect more from them than I would from the coach, the parents, the students, and so forth. Because that's what, it's got to have standard of care, and not doing something is not reaching that standard. But the same could be true of the coach who has gone through a concussion evaluation seminar. You would expect more. That's the way that this was set up. If they said, listen, the coach is in charge of catching and recognizing those signs of concussion, then we wouldn't need a 62 against the coach. And so all I'm saying is... The reason for that is because the coach is not part of the healing ice. Ice is... But a physical person we have here, that is their job. A physical trainer, that is their job. That's why they're there. That's why the Chicago Public Schools want somebody there, right? They want, in this case, under these facts, under these allegations, and I agree with you. There could be facts where it might be murkier. But here they weren't engaged in healing Drew Williams. That's the problem. Well, it's a healing art. It's a healing art. Therapists, physical therapists are healing art practitioners. Not always. Mr. Gibbs, let me ask you this one. These set of facts, you have Dr. Pierce on the sideline, and you have Referee Jones. Referee Jones, according to your factual situation, is under an obligation to assess Mr. Williams after he got in a violent collision. The referee had an obligation under your protocol by the Board of Education to look at Mr. Williams to determine whether he had a problem. Correct? Could be. Could be. Well, you said the referees, the coaches. It sort of depends how the school or the system has set up. Well, you just said the statute provides that. You could do any of those. They have that obligation, that duty. Well, whatever. You said the referee has a duty to stop a kid from playing a sport if he thinks he suffered a concussion. So I'm sorry. I may have missed it. The school code says that the school should charge any or all of those individuals. Okay. Let's say the school did charge the referee with, if you see someone get in a concussion or a violent collision, you should evaluate, assess, and determine whether you think he had suffered a traumatic brain injury. Okay. Whether he should be diagnosed by a physician for it. Right. Okay. And if on that sideline Dr. Pierce is there and he has been imposed the same duty on him, I would think that your evidence, if you sued, would be something different for the referee than it would be for the doctor because the doctor has a specialized training. The doctor is focused on healing arts. That's his job. That's his profession. Where the referee's profession is, referee. I would think that you would not put a neurosurgeon on or a licensed trainer on to say the referee reached his duty towards that yet. And you would certainly not put a referee on to testify against Dr. Pierce on the sidelines saying we both saw the same thing and I as the referee think the doctor committed malpractice, committed a breach of the standard of care as it related to the senior football player. So you're really dealing with the defendant and what his duties are towards that plaintiff. So because you have licensed trainers and licensed athletic service companies as defendants, it would seem to me that their duties are different than the referee or the umpire, whoever in that game, who basically has the same duty imposed on him by the Chicago Public Schools to watch out for these kids if they're in a violent collision. Everybody's got to make sure that the student's okay. So here's my allegation against the referee would be that the referee failed to recognize the signs of concussion. Assess, recognize, and evaluate just as you did against these defendants. And that Dr. Pierce engaged in healing arts when confronted with a student that's been sent to the sideline by the referee and presumably performed. Didn't perform, failed to perform. Well, if the referee sends the kid over to you and you go get a hot dog. I failed to perform. Then I believe that that physician, Dr. Pierce under that scenario, is negligent. And you would prove that by putting on Dr. Hyman to say a doctor in that situation, the standard of care required that Dr. Pierce to assess, evaluate, and diagnose. The latter. Not assess. Can't diagnose unless he assess. Perform an appropriate assessment and evaluation. So, I mean, I guess it would be fact specific, but if Dr. Pierce looked at him and said, what day is it? And he said, Saturday. Okay, I'm going to get a hot dog. Dr. Pierce may have performed what he thought was an assessment, but it's a wholly inadequate assessment. If that happens, that is definitely malpractice against the doctor and requires a 62. However, if the referee is akin to the athletic trainer, who is supposed to be looking out for these things and does nothing in the face of a concussive brain trauma, I think that's ordinary negligence. And so the Jackson factor says standard of care, whether the activity is inherently one of medical judgment is the second factor. And that's what I'm saying is that the recognition of brain trauma, concussive brain trauma, is not inherently one of medical judgment. The referee can do it. If he's trained. The coach can do it. If he's trained. The, you know, whoever is assigned that role can do it. And so that's not a medical judgment. Can do it without any training? Without any training. Right. You wouldn't expect somebody getting off the LaSalle Street bus to walk up to somebody and be able to evaluate them as to whether they had recently suffered a traumatic brain injury. You couldn't expect that. I agree. There has to be some level, some level of training. Right. I agree with that. Okay. So I'm just. . . Are you sure? Do you argue that sometimes an athletic trainer might be. . . Could be. And sometimes they're not? Yeah. So if an athletic trainer. . . And that's why I think, you know, we've sort of struggled with creating questions that wouldn't be too broad, wouldn't be too vague, wouldn't be too ambiguous. I think the questions here have to be answered in the negative because. . . And Judge Johnson was saying this to us. The allegations here are so specific that you can't say, these athletic trainers, given these specific allegations, need to have a 622 affidavit. Even though, you know, and just to touch on the third factor, as Jackson said, this is not to say that any time expert testimony is necessary, a 2-622 certificate will also be required. The Jackson court says that at page 913. And what I'm saying is that under this case, under these three, I think, somewhat simple and straightforward allegations, there need not be a 622. Under a different case where an athletic trainer does actually begin the assessment, under a different case where an athletic trainer, during a patient's rehab, forces him to go play before it's appropriate to go play, whether that's a head injury or a knee injury or whatever, those might be healing arts. That might be a defendant engaged in the healing arts. As we just said, you know, sometimes they are, sometimes they're not, and who's to know? Who's to know when 622 applies? The allegations control. So a plaintiff then, as to a physician, could say the physician went and got a hot dog. That's just ordinary negligence. But the statute is specific that if it's as to a physician, a 622 is required. But this is for other healing arts. That's the key. We're in the world of other healing arts. The key is, in my opinion, whether this licensed physical trainer is a part of the healing arts. And if the answer is yes, then you lose. If the answer is no, then you don't need the 622. I think it's not, I mean, you're trying to slice and dice with regard to the allegation, but 622 doesn't do that. 622 talks about the type of person that we're talking about, not the allegations and the complaint. And so you're moving us to the allegations, but that's not what 622 does. I think it would be a – Jackson didn't hold that you always need a 622 against an occupational therapist. I think that – I don't think anybody's arguing that it does. But I think that's what Justice Hyman is saying, is that any time an athletic trainer is a defendant, you need a 622, and I think that would be way more – It is, when you look at the Christmas case. In that case, it had nothing to do with the healing arts when somebody falls out of a wheelchair. That's different. That would be – I agree. I mean, there are exceptions. Right. And so that's all I'm saying, I guess, is in this case, under these allegations, I think the questions, albeit not perfect, should be answered in the negative to avoid any implication that it's a blanket rule that an athletic trainer – you always have to have a 622 against an athletic trainer, and I think that would be a big mistake. Finally, on the third point, and this sort of dovetails, I think, into sort of everything that I've been saying, I hope, we have to sort of deal with the statute as it's written. And the statute as it's written simply says, for affidavits filed as to all other defendants, the written report must be from a physician, licensed to practice medicine in all its branches. And we cited in a footnote in our brief an instance in 1998 when 622 was amended, and Speaker Madigan said, we want to get napropaths to have a 622 for napropaths. And that's the role of the legislature. Excuse me. The role of the legislature is to, if needed, amend the statute. And I would argue that the statute as written does not blanket cover athletic trainers, does not cover athletic trainers under the allegations of this specific case. And certainly, you know, if reasonable minds were to disagree with me, the affidavit would need to be from a physician licensed to practice medicine in all its branches. If there's any other questions, I'm happy to answer them. Well, just so I understand, you're not suggesting that an athletic trainer involved with a plaintiff who was injured while engaging an athletic trainer may not, in certain circumstances, require a 622 affidavit? It may very well. Depending on the facts of the case. It's very fact specific. Okay. Thank you. Thank you. Thank you. Thanks to the court. I'll take maybe one minute. This is David Brown again on behalf of the defendants. On the first two issues of discussing how the facts matter, I just wanted to bring up a simple hypothetical. I think it's your questions have addressed it. But the derivation, so he's saying it's an allegation of failure to assess, evaluate, and recognize. The second one of our clients steps up and says, I went and looked at Drew Williams. I spoke to him. I looked him in the eyes. He was fine to me. He told me he was fine. We were actually treating another area of his body. Then it becomes immediately an issue of medical judgment and whether that athletic trainer should have done something else. And that's going to be the standard of care that's going to fall under Jackson. And so I don't think you can focus in on, well, I'm couching the allegations as this. If they were couched in that way, it would box plaintiff in, frankly, pretty significantly in this case. And I think it would be an easy case to win on. So maybe I shouldn't be wishing for that, you know, more than that. But that's the way this would actually play out on a realistic basis. And so I think your honors are correct when you say that if we agree that athletic trainers are in the healing arts and we're talking about the conduct that was allegedly supposed to be engaged in by an athletic trainer, we're talking about 622 and the statute is required. And that's the only point I wanted to make. Thank you. Thank you. The only thing I'd like to point out to the panel is there was this holding in the Christmas case. And I think the Christmas court considered that there was some vagueness in the 622 statute. But the court said, when considering the qualifications of the report author, quote, the legislature undoubtedly intended for the same professional qualification standards to apply to both section 2622 report authors and expert witnesses at trial. And then they went on to say that a practitioner of a particular school of medicine is entitled to have his conduct tested by the standards of his school. The standard for expert witnesses at trial is that in order to testify as an expert on the standard of care in a given school of medicine, the witness must be licensed therein. So I'd just like to point out that Christmas kind of tied these two things together and said, if the evidence at the time of trial as to a particular standard of care of a healing art practitioner, if that is necessary for that expert to be in the same school, then the report also must be from the same school as the practitioner. Thank you. You weren't shorter than Mr. Brown. Thank you. Thank you very much. We'll take the case under advisement. Appreciate your excellent briefs and excellent arguments. Thank you. Thank you.